Good morning, and may it please the court, Michael Mongin for the state. I'd like to reserve five minutes of my time for rebuttal. The district court granted relief here based on an Eighth Amendment theory never before adopted by any court. That theory can be viewed as essentially the same as a traditional delay-based lackey claim, or it can be viewed as a new and distinct constitutional theory. On the first view, federal relief is barred by Section 2254 D1 because the state court reasonably denied Mr. Jones's lackey claim on the merits. If the claim is instead viewed as a new and distinct theory, then federal relief is barred in the first instance because Mr. Jones has never presented that theory in state court. The claim is also barred by Teague, and it fails on the merits. Can I stop you there and ask this? It is clear, isn't it, from the district court's ruling that certainly the district court viewed this amended Claim 27 as a distinct claim, a claim entirely distinct from the lackey claim, right? I think that's right with one caveat, Your Honor. The district court certainly attributed this claim to amended Claim 27 and viewed it as distinct from a lackey claim. We would argue that amended Claim 27 did not present this arbitrariness theory if it's viewed as distinct. I actually agree with that. But nonetheless, in supplemental briefing, I think Petitioner's Counsel certainly did develop the argument more fully. But I just do you understand your opponent to also agree that this is an entirely distinct claim as well? Yes, Your Honor. I understand both Mr. Jones and the state prior to the Andrews decision to take the position that these are distinct claims, and that is the position the district court took and that the California Supreme Court recently took. So the critical threshold question then for us is really whether the district court's exhaustion ruling is correct, right? That there was this exemption or excuse from the ordinary exhaustion rules that applies here. And I guess I haven't seen a lot of cases, certainly not from our circuit, that deal with the, what is it, 2254? Is it B1B exception? And I'd like to hear what you have to say about that issue. Yes, Your Honor. If this is viewed as a distinct claim, I agree that the threshold question, the critical threshold question is the exhaustion issue. We certainly disagree with the district court's application of that exception, which applies in narrow circumstances where the state process is found to be ineffective. And here's the main reason why. The cases that the district court and Mr. Jones have cited on applying that exception arise in a very different procedural posture. They arise in situations where there is a state defendant who has an ongoing state proceeding that has not been resolved. And that defendant goes to federal court and argues that I haven't been able to get an answer from the state courts. There's been an ordinate delay, and you should excuse exhaustion based on that delay. But here, Mr. Jones has had every claim that he ever presented to the California Supreme Court adjudicated. He has no pending ongoing California proceeding. He has not raised this distinct arbitrariness theory in the state court. And I'm not aware of any precedent supporting the argument that a federal habeas petitioner can have exhaustion excused based merely on speculation that it would take the court a long time to address a claim if he presented it there, when he has not actually presented the claim there. To what extent are we bound by Andrews, which essentially says that this claim, although treated differently in our case, really is a form of lackey claim, and therefore was exhausted, at least in Andrews, because like a typical lackey claim, it relies on delay, the difference being whether it's my individual delay or the delay of others and me. Are we bound by that to say that it is exhausted? Well, Your Honor, we certainly read Andrews as concluding that the district court's theory here is essentially the same claim, at least for federal habeas and exhaustion purposes, as a lackey delay-based claim. That wasn't the argument we made in Andrews, but it was our argument that their distinct was rejected by the court. So if the court agrees with our reading of Andrews, then I do think that the analysis here would proceed in a similar fashion as in Andrews. That is, Mr. Jones presented a lackey claim to the state court, it was denied on the merits, and so relief on that claim would be viewed, would be unavailable under 2254 D1. And Andrews, the other leg of the, I don't know, I guess there are only two legs to this stool, which isn't a good thing, but the other point that Andrews made would also presumably be binding on us then, which is that reasonable, no reasonable jurist could buy the theory that was given in this case on this record. Yes, Your Honor. He didn't even issue a COA on this claim. That's right. That was the conclusion in Andrews, and it was the conclusion of the court in Allen v. Wernoski. I think if you're applying 2254 D1, one has to look to the established U.S. Supreme Court precedent, that the state court's denial of this claim on the merits was contrary to or an unreasonable application of clearly established federal precedent for purposes of D1. Can I take you one step back in your response to Judge Graber's question? I thought I read your supplemental brief asking for your position in light of Andrews to take the position first that actually Andrews did not conflate these two claims, that in fact it couldn't have done so because there was no ability of the petitioner in that case to amend his claims. He filed a supplemental brief on appeal after the regular course of briefing had already closed. So I thought your position was that actually, no, Andrews can't be read to say that the two claims are one and the same, and you kind of, I thought, argued persuasively as to why Andrews wouldn't control on that point, and then I thought your position was just as a fallback, but if for some reason you guys want to view Andrews as having held that, then the case is even easier, we win. So what is your, what's the first position? Right, Your Honor, I don't think that's how we argued it in the supplemental brief. We read Andrews as concluding that this is the same claim, essentially the same claim as the language that the court used for federal habeas purposes. Now that's not the, that's not what the state thought the best view of the law was when we presented this in Andrews, and so for that reason, our argument to the court in Andrews was, we understand there's a supplemental brief here, it references a lackey claim, and relief on that claim is barred by DUI. How could they be, how could they be the same claim? The legal theories are entirely distinct. Well, Your Honor, we certainly agree with that view of the law, and the arbitrariness theory, in addition to not just focusing on delay in an individual case, would suggest that any death sentence in California is unconstitutional, regardless of the delay in that case, and that was the argument that we presented to the court in Andrews, but we read that court's decision as saying we disagree with that argument, and because these are both related to delay in the system, we're treating it as the same claim, at least for federal habeas purposes. Why wouldn't we just read Andrews as saying, look, the only claim framed in any pleading, either in state or federal court in that case, was the straight lackey claim. All the petitioner there did was basically submit as supplemental authority in support of that already pleaded lackey claim, the district court's decision in this case. You know, you can't change the nature of the claim that the petitioner presented there because there's no ability to amend the claim after the case is already fully briefed on appeal. So I read Andrews, and I thought, that's why I'm glad you clarified, I thought your brief argued quite persuasively that, no, all Andrews could possibly have held is that merely submitting this one case as supplemental authority after the close of briefing on appeal can't transform the nature of the claim that's before us. The only claim that's before us is a slacky claim, and we've already determined that there's no merit to it. Your Honor, let me answer your question. I just want to say at the outset, I don't want to push back too hard on this point because if the court disagrees with our reading of Andrews, we would be fine if the court views this as an open question, and we would continue to argue that this is a distinct claim. Our argument in the supplemental brief was just based on a reading of Andrews, and the reason that we read Andrews that way is that that decision refers to consideration of the claim before the court in the supplemental brief. It describes that claim as an Eighth Amendment claim based on Jones at page 50 of the slip opinion, and it acknowledges that Mr. Andrews was arguing not just that his individual death sentence was invalid under the Eighth Amendment, but that any death sentence in California. That is not what the petitioner was arguing there, though, and I think the court made quite clear that his claim was limited to arguing that his death sentence was unconstitutional. It had no effect on anybody else's. Well, Your Honor, I guess I would respectfully disagree in the sense that the petitioner in Andrews and the Andrews court quoted this argued that the death penalty was unconstitutional on its face. Now, I don't know whether that's a proper use of the sort of facial challenge concept, but I think that indicated a broader challenge. But I think I'd be happy to address why we believe that even viewing this as a distinct claim, federal habeas relief is barred. And at the outset, the key threshold issue is whether it was exhausted. We certainly don't think that exhaustion can be excused based on this record and based on the case law in that area. And I would just like to note Mr. Jones has argued that the state somehow waived the exhaustion argument with respect to the arbitrariness theory. That is not correct. We certainly, when the district court announced its full explication of the arbitrariness theory in its order in July 2014, at that hearing, we raised an exhaustion argument. And we had raised an exhaustion argument previously in the alternative as to amended claim 27. The representation that we made to the state Supreme Court was that, pardon me, was that we agreed with Mr. Jones's representation that original claim 27, which I think everyone agrees is just a lackey claim, was exhausted. But that representation certainly can't act as an express waiver under 2254B. That's why I don't see why you're trying to defend Andrews as having conflated these two claims. The whole, your whole ability to get around the exhaustion waiver argument depends on these being separate and distinct claims. And I think they clearly are. So I don't even, I don't know. I mean, maybe you're just saying we don't know what Andrews meant, but if you read it that way, fine. But you're really, your stronger position here is to argue that they're very distinct. Well, Your Honor, that has been our position. And, yes, our argument based on Andrews is essentially that's the way that we read it. Which brings you to a Teague bar. I'm sorry. That's all right. Presumably that's why you argue Teague at that point. Yes, Your Honor. I mean, we think whether the claim is viewed as the same as a lackey claim or as distinct, relief on that claim would be barred by Teague. And I think that the central lesson of Teague is that a claim is a new one unless it is dictated by precedent at the time that an individual's conviction became final. And I understand that the district court cited Furman for the proposition that this is somehow an old rule. But I don't think that it can be said that precedent existing as of 2003 or even today would compel the district court's Eighth Amendment analysis here. I think this is a very novel theory that is not dictated or compelled by any existing precedent of this court or of the United States Supreme Court. I was going to ask you, so tell me how you read Andrews as saying that these are two distinct claims. Your Honor, we read that based on the opening part of the court's opinion. I think it's around page 48, 49, 50 of the slip opinion. And it says at the threshold we have to confront the state's argument that the supplemental brief is trying to raise a new claim that was not before the district court and that hasn't been exhausted in state court. And we had argued in Andrews as here that the arbitrariness theory adopted by the district court here would be a new, unexhausted theory. And the court in Andrews, as we read that decision, references our argument, and it says we disagree and proceeds to say this is essentially the same constitutional claim. Now, again, I don't want to fight too hard on this because as we recognize in our brief, there's some language in Andrews that if read in isolation might support a different reading. And if that's the court's reading, then we certainly would persist in our argument that this is a distinct theory that has never been exhausted and is barred by Teague and, we believe, fails on the merits for the reasons set out in the people versus Sayamano decision and in our opening brief. It is absolutely the case, Your Honor, that the review process in California is a lengthy one. And we would acknowledge that the pace of that review process varies across cases. California insists on a careful and deliberate and thorough review of every single capital conviction and sentence. But those facts do not establish that the system is arbitrary or that it produces random results. And I think as Andrews recognized at slip out page 52, it would require a substantial extension of Furman and Gregg to read them as supporting the district court's theory here. Your Honors, I see that I'm approaching five minutes. If it pleases the court, I'd reserve the balance of my time for rebuttal. You may do that. Thank you. Good morning. Michael Lawrence, appearing on behalf of Petitioner Appellee Ernest Jones. Forty years ago, the U.S. Supreme Court in Furman versus Georgia examined state death penalty statutes and held that those statutes that arbitrarily inflict the ultimate punishment or produce systems in which there is no measurable advancement of legitimate penological purposes violate the Eighth Amendment. But that was a completely different issue in that in Furman, the question was, in which cases is the death penalty imposed by the court? And here the question is, assuming that the process that led to the imposition of the death penalty was proper, the question is, now what? What about all the people who are properly convicted, properly sentenced to death? When are they executed? It doesn't seem to me that that's the question that Furman asked or answered. I respectfully disagree. The prokaryot decision in Furman, which is the decision of the majority of the court, clearly said that they were looking at not only the imposition of a death sentence, but carrying out the death sentence. And five members of the court found that both of those processes. But the issue in the case, it wasn't teed up the way this is teed up. I, again, respectfully disagree. What the justices looked at was not only who was sentenced to death. That was certainly a major aspect of what the court was looking at. And in footnote 11, Chief Justice Berger explained that between 15 and 20 percent of those individuals who were eligible for death were actually convicted, that the randomness of the arbitrariness, in Justice Stewart's words, that the randomness of the imposition of capital punishment it's carrying out was cruel and unusual in the same sense that being struck by lightning was cruel and unusual. And I don't see any distinction between whether or not somebody is properly sentenced to death and then is allowed to linger on death row 30 years or 40 years, as California system has done so, whether or not the randomness and arbitrariness that was condemned in Furman exists today. The question is whether or not the Supreme Court has articulated that as being arbitrary. That's the difficulty I'm having with your argument is there has to be clearly established Supreme Court precedent on that particular point, the imposition of the death penalty as opposed to the duration of the confinement on death row. Your question raises several issues, the first of which is whether or not conditions after the sentencing of death can form the basis for an Eighth Amendment violation. That question was clearly answered by the Supreme Court in Ford v. Wainwright, which said a person who becomes incompetent after the imposition of a death sentence may not be executed, and for a class of individuals who are suffering from that ailment may not be executed, and there is no bar under Teague v. Lane. Agreed, but has the Supreme Court said that the mere fact that one is lingering on death row for a finite number of years or an infinite number of years constitutes a constitutional violation? And that to me is the difference between a Lackey claim and a Jones claim, and what's very clear in the District Court's decision was, and if you look at the argument on this motion, the District Court was very clear when respondent attempted to say this is a Lackey claim, the District Court agreed to that, and that's just not how I see it. I see this as an arbitrariness claim, which Firman v. Georgia condemned. How does Andrews see it in your view? Interestingly, we are spending quite a bit of time talking about whether or not it's the same claim, or not the same claim. The reason is that we as a three-judge panel are bound to follow the precedents set by another three-judge panel that published an opinion of a Jones claim is, in fact, a lackey claim, then we have to follow that. And if Andrews held that a Jones claim does not even warrant a certificate of appealability, then we're bound by that holding. So it's important, at least from my perspective, for us to get a clear understanding of what Andrews held. Andrews had before it the lackey claim that was presented in State Court, and the motion itself said, as you can very clearly read it, the information presented by the Jones decision supports our lackey claim, which is Mr. Andrews has spent an inordinate amount of time on death row, and his execution serves no penealogical purpose. The word arbitrary doesn't even appear in the Andrews decision. It's very clear in Andrews to say that, quote, Andrews has not introduced any new facts or evidence since he raised this argument to the State Court. That, to me, indicates very clearly that this Court in Andrews was dealing with a lackey claim, and that the Jones decision was used by Mr. Andrews solely as precedential information to support his lackey claim. That's all it could be, because the claims are framed by the habeas petition itself, and the claims are framed by Mr. Andrews. The habeas petition there was just the straight lackey claim, so there's no way the Andrews panel could have been presented with some new claim. That's why I think, just as you described, it just framed it as, well, I guess you're submitting this Jones case in support of the claim that's already before us, and to that extent it doesn't change anything for us. But I don't see how the panel could have held anything more than that. That certainly is our position, Your Honor. And clearly in our supplemental brief we indicated you cannot amend a petition on appeal. Okay, so then you run headlong into the exhaustion problem, because I'm inclined to agree with your reading of Andrews, but I have major problems with the district court's exhaustion ruling. So maybe you can address, and you heard what your opponent had to say here about why they think the district court was wrong in thinking exhaustion was excused, so maybe you can address that. Certainly, there are two reasons why 2254B1B2 apply in this instance. Exhaustion is excused when a state remedy is ineffective. The first reason is that a state is not entitled to further exacerbate a constitutional violation by invoking the exhaustion requirement when the state is the primary cause of the violation. As the district court found, returning to the state supreme court to exhaust its claim would only compound the delay that he has already set. And the second reason is that the state has suffered. Well, counsel, if that's true, in Sayumanu the California supreme court has made quite clear that the record in this case does not warrant relief on the merits. So maybe there's an excusing of exhaustion, but where does that get you if the California supreme court has looked at this very record and said we are not going to grant you any relief on the merits? Well, the California supreme court has said that they are not going to grant relief on that record. Now, they pose that the possibility that's on some other record where instead of having process that's individualized, someone, you know, rolls dice or something, but that's what they clearly say in this case is on the Jones record there is no relief to be had. So what do we make of that? I know it's a different case, but they clearly were reading this record, so what do we do with that case? Of course, your honor's question raises the issue of futility, whether or not the California supreme court has already predisposed to deny these types of claims. Some of these types of claims, they read this record and said it does not warrant relief. Well, the court in Sayumanu did not review the declarations that I filed in the district court. It was very clear that it said that the record that they could take judicial notice of included the commission on the fair administration of justice's report, the CDCR websites, articles and scholarly positions that discuss the issue, but it very clearly could not take judicial notice of the factual record that was created in Jones, which actually answered the questions that they posed. I think more fundamentally, though, is that the California supreme court did not even acknowledge that there's a problem with a system in which habeas counsel is lacking for almost half of the row, in which it takes two decades for the California supreme court to appoint a lawyer in a post-conviction proceeding, and its state process shifts the burden of evaluating constitutional violations and even funding adequate resources for investigating these claims to the federal government. In fact, the state system is dysfunctional, and the state court is one of the primary sources of that dysfunction, and it is precisely the reasons why the district court found it to be intolerable to send this case back to the state court system. And most importantly, Sayumanu is not the first instance in which the California supreme court could have resolved this issue. Two weeks after this decision was announced in Jones, I filed informal briefing in the California supreme court at In re Hay Jack, two weeks, 13 months ago. That case has been sitting there without any movement from the California supreme court, as it has sat in 18 other cases that the HCRC has filed on behalf of death row inmates. If the California supreme court was truly, truly wanted to resolve this question, and it would resolve it any other way, it would not have been possible. If it were resolved in an expeditious manner, it would have done so a year ago. Now, Sayumanu also does not acknowledge the very clear evidence that was presented in the district court, and that is the source of the delay, which then ultimately results in arbitrariness. And I want to get back to arbitrariness in a minute. The source of the delay is a lack of funding of the indigent defense service program that the California commission of the federal administration of justice has a dysfunctional process that can only be alleviated with an infusion of funds. That was 2008, and not one dime has been spent to fix this problem. And we know from the amici, the legislators, no money is going to be spent on this system. And so the question is, if Mr. Jones is required to go back and exhaust his claim, what are we expecting to accomplish with that exhaustion? We expect that the California Supreme Court will take four years before Mr. Jones will get a postcard denial that will not explain its result, that will not give the federal courts any idea of how to interpret why the California Supreme Court has denied that claim. And we will be back in federal courts in four years prolonging Mr. Jones's stay on death row, prolonging the process for virtually everybody on California's death row. Without any measurable results. What's your response to your opponent's argument that none, that the only cases in which that B1B2 exception has been found to apply involve a petitioner who has a pending state court proceeding that's ongoing, but it's just taking the state court forever to resolve it, and the federal courts finally say, you know what, enough is enough, you've waited, sir, four, five, six years, we're done, we're going to go ahead and reach the merits. Whereas here, your client hasn't even tried yet. In Ashman's versus Calderon, in 1997, this court recognized that the lack of counsel for 130 people on death row disenfranchised California from the fast track provisions of the Anti-Terrorism Act. That was 130 in 1997, we are now at 358 people on death row without habeas counsel, with a wait being at least eight to ten years. Counsel, what are your thoughts on the Teague issue? Your Honor, I think the easiest way to address the Teague issue is to look at the first exception to Teague, and that is, this court must examine whether or not the rule is procedural or substantive. And the Supreme Court very clearly indicated that substantive rules are not subject to non-retroactivity, and that the rule is unquestionably substantive as established certainly in Ford versus Wainwright, which the court said when you are looking at a case that is not subject to non-retroactivity. The category of individuals who will be excluded from capital punishment, that is a substantive rule, and that rule has been followed in Teague. What is the category of individuals, in your view, that is affected by the rule that you call substantive? What is the category of individuals? Everyone on California's death row is subject to the district court's ruling. So the category of individuals would be everyone on California's death row? Yes. And so what case from the Supreme Court most strongly supports your characterization of everyone on California's death row as being an appropriate category of individuals? The easiest one is Furman versus Georgia, in which the United States Supreme Court looked at the state procedures in place in Georgia. Was Furman a Teague case? It wasn't, but it was retroactivity, and the retroactivity principles have not changed with respect to invalidating state statutes or holding everybody on death row to be a category of individuals to which the substantive exception to Teague applies. So Atkins versus Virginia. The numerous cases where the court has held that a whole category of individuals that we can identify who would get relief regardless of the circumstances that put them on to death row, is a substantive rule, and the Supreme Court's decision in Sherrill versus Summerlin is actually quite specific about what procedural rules are. Sherrill said that, quote, rules that regulate only the manner of determining the defendant's culpability are procedural, and that prototypical procedural rules are rules that allocate decision making authority. The district court's rule here does neither of those. The procedure that put Mr. Jones on death row, or determined his culpability, was constitutionally invalid. Are you looking at the procedure that keeps him on death row? We're looking at the procedure that results in arbitrariness, and that's exactly what Furman looked at. Furman looked at the procedures that put people in the position of being executed in Georgia, and that it was the entire comprehensive review of those procedures that led to the substantive decision that those statutes apply. Those statutes were invalid, and in the same way California's procedures are invalid, under the U.S. Supreme Court's Teague exception to substantive review. Now, if there's any ambiguity about what a substantive rule means, the U.S. Supreme Court has taken the case of Montgomery versus Louisiana, which is going to decide, likely decide, whether or not the Supreme Court's decision in Miller versus Alabama is a substantive rule. That is, can you issue, can you sentence individuals to life without possibility of parole as juveniles, without any consideration of mitigation? And if the court has any concerns about the ambiguity of a substantive rule, I think that the question will clearly be answered. I think the question will clearly be answered in that case, but I think that under the prevailing U.S. Supreme Court doctrine, the exception to the substantive rule is a substantive rule, and the Teague red non-retroactivity principle very clearly applies in this case. The entire category of offenders is being treated exactly alike by the district court's rule, and would require the granting of relief for all individuals on death row in California. The U.S. Supreme Court made it very clear in Green versus Fisher that even after the enactment of the Anti-Terrorism and Effective Death Penalty Act, habeas procedures, quote, must guard against extreme malfunction in the state criminal justice systems. There is no question based on the district court's findings in this case that there has been an extreme malfunction in California's death penalty process. The average time it takes from start to finish in the state courts exceeds 20 years. Seventy-six individuals whose cases have been affirmed on direct appeal have waited more than 16 years to receive their death penalty. That's 16 years for the appointment of habeas counsel, 16 years to begin the state habeas process, which will take, by anyone's estimate, another 8 to 10 years once lawyers have been located for those individuals. I don't think it is a stretch to say that a system that produces such lengthy delays constitutes a gross malfunction in the criminal justice system. And if the California Supreme Court should be given an opportunity to correct this problem one more time, I think it's important for us to remember what has happened in the last 19 years since this court issued its decision in Ashmus. They created an habeas corpus resource center, my office, designed to provide representation to individuals on death row. But it's the only state agency that has a statutory limit on the number of attorneys it can hire. Thirty-four lawyers, 34 lawyers to handle 758 people is impossible. So no matter what the amount of money that is available from private sources, from other government sources, my agency cannot expand the number of lawyers to represent these individuals. In 2006, in 2008, the Commission on the Fair Administration of Justice looked at this problem and it was a bipartisan commission composed primarily of prosecutors, prosecutors, law enforcement personnel, and a few defense lawyers to represent the interest of death row inmates. Unanimously, that commission found, in the words of Chief Justice Ronald George, the system is dysfunctional and it will collapse upon its own weight unless California does something to fix this process. In the years that have taken place since the commission's report, California has not done anything to correct this problem. California did not do anything when it should have been a clarion call when the district court in this case found that California's process is unconstitutional, and yet no steps have been taken. In the Supreme Court's words in Green v. Fisher, habeas procedures must guard against extreme malfunction. Thank you, counsel. Thank you, Your Honor. I want to clarify two quick points that were brought up in the preceding argument, and then I think I'd like to make three points related to exhaustion and Teague. First, the California Supreme Court in Sayomanu did assume, for the sake of argument, that all of the facts that were before the district court here were before that court. That's at page 102 of their slip opinion. Second, with respect to my friend, Furman did not address any application of the arbitrariness principle in the post-conviction review process, and I think the Supreme Court made that very clear in the Gregg case where it said that Furman, quote, held only that, and then went on to describe the holding regarding penalty phase sentencing procedures. With respect to exhaustion, my first point is that I disagree with Mr. Jones's reading of the Coe case. I don't believe that that case suggests that any time any federal habeas petitioner invokes a delay claim, exhaustion is necessarily excused. I read that case as being very focused on the particular circumstances of that case, which, as I've argued, are distinguishable from this case. Second, Mr. Lawrence argued, or suggested, that if a focused exhaustion petition were filed in this case, it would take four years for the state court to adjudicate that. I don't believe that there's a basis for inferring or assuming that it would take that long, necessarily. I understand that there are some figures in the district court's order about the average amount of time for an exhaustion petition, but I would point the court to the state Supreme Court's N. Ray Rano decision, which describes the phenomenon of exhaustion petitions in California and how, prior to N. Ray Rano, they were often hundreds of pages long and raising scores of claims. And the court in that decision adopted policies to try and focus exhaustion petitions and ensure that it could use its resources to properly, to quickly process those. If we were to agree with your reading of Sayamano, I'm not saying we do, but if we were, then why would we have to file an exhaustion petition? Why would a patent exhaustion be unnecessary or futile if we already know what the California Supreme Court's answer is to whether the Jones record demonstrates a constitutional violation? Right. Your Honor, I think our position would be that exhaustion would still be required in that case, and I understand that there is some precedent from the late 70s and early 80s suggesting that exhaustion might be excused if the state court had recently rejected the same claim or a separate petition. And I think that the state court would have to make a similar claim. But I don't think that that law is an accurate statement of the current law. In the wake of the Supreme Court's statement in Engle v. Isaac that federal habeas petitioners need to raise every claim in the state court, even if they think it's going to be unsuccessful because the state court might change its mind, or certainly the state court might see something different about that case that warrants a different result. And second, the current state of the federal habeas statute, as the Supreme Court has said, makes clear that state court proceedings are meant to be the central process and to channel claims to the state courts in the first instance. So I think that current law insists that the state courts have at least an opportunity to adjudicate any claim in the first instance. And I would imagine that if Mr. Jones tries to exhaust this claim in light of the Sayumano decision, you know, he's going to have to go to the Supreme Court. He may try and invoke additional arguments to suggest that the system is arbitrary. We do not believe that there's any evidence, certainly not on this record or any that we're aware of, that this system is arbitrary or random or leads to random results. And I guess I would just close on that point if the court doesn't have further questions. It is Mr. Lawrence spoke about the current state of the process. The district court's order speaks about that as well. I have a question about the Teague comments that were made. Do you agree with the categorization of all inmates on death row as being a category that takes this rule outside the procedural realm? I don't agree with that argument, Your Honor. We don't believe that this is a substantive rule. I would acknowledge that I think that the district court's theory, as we understand it, is one that has potential application to anyone currently on death row. But I don't read the court as suggesting that the state is forever barred from proceeding with executions, even assuming that the district court's Eighth Amendment theory is correct, if the state addressed the alleged procedural deficiencies. And I would note that when the United States Supreme Court has talked about substantive rules, it has said that there's two types of rule. One barring the death penalty for a particular type of conduct and one for a particular class of persons. But when it's applied that class of persons exception, it's always looked to some status inherent in the person, like their age at the time of the crime or their mental abilities. It's never based it on the fact that there's a class of people who have all allegedly suffered essentially the same procedural violation. Thank you, counsel. Thank you, Your Honor.
judges: Graber, Rawlinson, Watford